IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

MARVA HOWELL                                                                  PLAINTIFF

V.                                        NO.  2:06cv00233 JWC

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                                    DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Marva Howell, seeks judicial review of the denial of her claim for

supplemental security income (SSI) benefits.  Both parties have submitted briefs (docket

entries #10, #11).  For the reasons that follow, the Court[1] **reverses** the Commissioner's

decision and **remands** the case for further administrative proceedings.


I.

Judicial review of the Commissioner's denial of benefits examines whether the

decision is based on legal error, and whether the findings of fact are supported by

substantial evidence in the record as a whole.  42 U.S.C. §§ 405(g), 1383(c)(3); *Lacroix*

*v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006).  Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must consider both evidence

that detracts from and evidence that supports the Commissioner's decision, and the

---

[1]The parties have consented to the jurisdiction of the United States Magistrate Judge
(docket entry #5).

decision should not be reversed merely because substantial evidence would have supported a different outcome.  *Lacroix*, 465 F.3d at 885.


II.

In her application documents and at the hearing before the Administrative Law Judge (ALJ), Plaintiff alleged inability to work since May 25, 2000, due to diabetes, sickle cell anemia, high blood pressure, headaches, learning and mental problems, depression and anxiety, fatigue, and pain in her arms, feet, legs and back.  (Tr. 45, 69, 94, 194-99.) She was thirty-six years old at the time of the hearing, with a high school education and past work as a housekeeper, box maker, and fish puller/checker.  (Tr. 189-92, 204-06.)

Under the applicable law, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The regulations provide a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  Basically, those procedures require the ALJ to take into account whether a claimant is working, whether the claimant's physical or mental impairments are severe, whether the impairments meet or equal an impairment listed in the regulations, whether the impairments prevent a resumption of work done in the past, and whether they preclude any other type of work.  *Id.*  In evaluating a mental impairment, the ALJ must also rate the degree of a claimant's functional limitation in certain areas.  20 C.F.R. § 416.920a.

Here, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since July 18, 2003, the date she protectively filed her application and became eligible for SSI benefits.[2]   (*See* Tr. 109.)   The ALJ next determined, at step two, that Plaintiff suffered from a severe impairment of depression, but did not find the factors necessary to equal a step-three listed impairment as contained in the regulations.  In doing so, he evaluated her mental impairment in accordance with § 416.920a, finding mild limitations in her activities of daily living; moderate limitations in social functioning and concentration, persistence and pace; and no extended or repeated episodes of decompensation.  At step four, the ALJ found that Plaintiff was unable to perform her past relevant work, but retained the residual functional capacity (RFC) to perform a full range of unskilled work at all exertional levels which allows her to perform tasks where interpersonal contact is incidental to work performed, complexity of tasks is learned and performed by rote with few variables, and little judgment is required.  At step five, after consulting with a vocational expert and considering Plaintiff's age (younger individual), education (high school), work skills and RFC, the ALJ found that there were a significant number of jobs in the national economy which Plaintiff could perform.  The ALJ thus concluded that Plaintiff was not disabled.  (Tr. 11-17.)  Plaintiff pursued administrative review with no success, making the ALJ's decision the final decision of the Commissioner. (Tr. 3-10, 211-14.)

---

[2]SSI benefits are not payable for any period prior to the date a claimant files an SSI application.  *See Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989).  In other words, the relevant time period in SSI cases starts with the date the SSI application is filed.  *Id.*

III.

Plaintiff first argues that the ALJ failed to properly develop the record regarding her borderline intellectual functioning, failed to include her intellectual limitations in his hypothetical question to the vocational expert, and should have sent her to a consultative examiner for IQ testing.

Because social security hearings are non-adversarial, the ALJ bears a responsibility to develop the record fully and fairly, independent of the claimant's burden to press his case. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004).  This is especially true where, as here (Tr. 187-88), the claimant is not represented by counsel during the administrative proceedings.  *Reeder v. Apfel*, 214 F.3d 984, 987 (8th Cir. 2000).  The ALJ's duty to develop may include seeking a consultative examination or clarification from medical sources if a crucial issue is undeveloped or underdeveloped.  *See Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006); *Snead*, 360 F.3d at 838-39; 20 C.F.R. §§ 416.912(e) & (f), 416.919a.

On September 5, 2001, Dr. Charles Spellmann, a licensed psychologist, performed an evaluation of Plaintiff's mental status and adaptive functioning.  (Tr. 116-19.)  Among other things, he assessed her intellectual functioning in the areas of orientation, memory, information, calculation, abstract thinking, similarities and differences, and judgment.  After doing so, he estimated her IQ at 71-79.  (Tr. 118.)  This places her in the category of borderline intellectual functioning.  *See Hutsell v. Massanari*, 259 F.3d 707, 709 n.3 (8th Cir. 2001) (borderline intellectual functioning is a condition defined as an IQ score within the 71-84 range, while mental retardation is a score of about 70 or below).

This estimated IQ is supported by other evidence in the record.  Plaintiff alleged, in her application and at the hearing, "learning problems" as a basis for disability.  (Tr. 69, 74, 194, 198.)  In her application papers, she also asserted that she had a "hard [time] understanding" and was "unable to think well" (Tr. 94), and that she completed high school without being in special education classes, but was "push[ed] through school with all F." (Tr. 68, 73, 100.)  She testified at the hearing that she made poor grades in school, can add and subtract but cannot do higher math including fractions, can read a newspaper but does not always understand it, thinks she reads at a fourth grade level, and quit adult continuing education classes after a month or two because she could not understand what was being taught.  (Tr. 190-91, 198.)

The record also contains a medical evaluation by Dr. David Webber, her primary care physician, which appears to be dated July 27, 2003.  In the assessment, Plaintiff's self-reported conditions included "LD" (learning disability), and Dr. Webber noted that she experienced functional capacity deficits in communication ("accurate and efficient transmission and/or reception of either verbal or non-verbal information") and interpersonal skills.  (Tr. 120-21.)

In assessing Plaintiff's mental RFC as part of the disability determination process, two state agency medical consultants reviewed her medical records and other evidence in the record: Kathryn M. Gale, M.D. on November 18, 2003; and Brad Williams, Ph.D., a psychologist, on February 19, 2004.  (Tr. 152-55.)  They concluded Plaintiff was "not significantly limited"[3] in her ability to: remember locations and work-like procedures;

_____

[3]The RFC form lists three degrees of limitation: not significantly limited, moderately limited, and markedly limited.

understand, remember and carry out "very short and simple" instructions; perform activities within a schedule; sustain an ordinary routine without special supervision; work in cooperation with or proximity to others; make simple work-related decisions; ask simple questions and request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others.

Drs. Gale and Williams found, however, that Plaintiff was "moderately limited" in her ability to: understand, remember and carry out *detailed* instructions; maintain attention and concentration for extended periods; complete a normal workday and work week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and interact appropriately with the general public.  The assessment contains this conclusion by Dr. Gale: "The claimant is able to perform work where interpersonal contact is incidental to work performed, e.g., assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete."  (Tr. 154.)

Finally, an agency-prepared "case worksheet/RFC supplement" summarizing Plaintiff's medical history contains the notation "BIF?," indicating recognition that borderline intellectual functioning was a potential impairment.  (Tr. 156.)

The ALJ is required to evaluate every medical opinion received, 20 C.F.R. § 416.927(b) & (d), and to consider all impairments alleged by the claimant or about which

evidence is received, *id.* § 416.912(a).  Borderline intellectual functioning is an impairment

that can impact upon the ALJ's determinations at all stages of the sequential analysis.  *See*

*Grissom v. Barnhart*, 416 F.3d 834, 837-38 (8th Cir. 2005) (remanding for reconsideration

of fourth and fifth steps in light of claimant's borderline intellectual functioning); *Reeder*,

214 F.3d at 986-88 (remanding for valid testing and further development of record where

ALJ disregarded physician-estimated IQ that fell within range of step-three listing).

Although the ALJ does not have to accept an opinion regarding a claimant's limited

intellectual capacity, he should explain his reasons for discrediting the opinion.[4]  *Reeder*,

214 F.3d at 987.

Here, the ALJ's decision does not mention Dr. Spellmann's opinion at all, much less

give any indication as to whether he was crediting or discrediting the estimate of Plaintiff's

IQ.  Nor does the ALJ mention Plaintiff's testimony about her limited intellectual abilities

or any of the specific record references mentioned above, with the exception of Dr. Gale's

ultimate RFC conclusion.  Although the ALJ questioned Plaintiff about her "learning

problems" at the hearing (Tr. 190-91, 198), his decision makes no reference whatsoever

to those alleged problems, the possibility of borderline intellectual functioning, or Plaintiff's

educational and intellectual deficiencies.

Moreover, the ALJ did not include any specific intellectual limitations in his

hypothetical question to the vocational expert.  At step five, the Commissioner bears the

burden of showing that jobs exist in significant numbers which a person with the claimant's

residual functional capacity and vocational factors can perform.  20 C.F.R. § 416.960(c)(2).

---

[4]Borderline intellectual functioning must be considered even though it pre-dates an SSI application.  *Grissom*, 416 F.3d at 837.

However, vocational expert testimony based on hypothetical questions that do not encompass all of a claimant's relevant impairments cannot constitute substantial evidence to support the Commissioner's step-five decision. *Wilson v. Astrue*, 493 F.3d 965, 967 (8th Cir. 2007).   The Eighth Circuit Court of Appeals has repeatedly held that borderline intellectual functioning is a significant nonexertional impairment that, if supported by the record, must be considered by a vocational expert and included in any hypothetical question.  *Swope v. Barnhart*, 436 F.3d 1023, 1025 (8th Cir. 2006); *Grissom*, 416 F.3d at 837-38; *Holz v. Apfel*, 191 F.3d 945, 947 (8th Cir. 1999); *Foreman v. Callahan*, 122 F.3d 24, 26 (8th Cir. 1997); *Lucy v. Chater*, 113 F.3d 905, 908 (8th Cir. 1997).

Here, the relevant question posed to the vocational expert was as follows:

Please assume you are dealing with an individual who is 38 years old with a high school education, and with no past relevant work.  Further assume she has no physical restrictions and retains a residual functional capacity for full range work at all exertional levels.  Finally, the hypothetical individual has the mental capacity to perform work where interpersonal contact is incidental to the work performed; tasks should be no more complex than those learned and performed by rote, with few variables and little judgment; and supervision required is simple, direct, and concrete.

(Tr. 112.)   This parallels the RFC conclusion reached by the state agency medical consultants.[5]  The expert responded that a wide range of unskilled jobs fell within these parameters.  (Tr. 113.)

Although a hypothetical need not "frame the claimant's impairments in the specific diagnostic terms used in the medical reports," it still must "capture the concrete

---

[5]While the RFC in the hypothetical question is identical to that reached by Dr. Gale (Tr. 112, 154), the RFC stated in the ALJ's decision omits the last phrase regarding the requirement of supervision that is simple, direct and concrete.  (Tr. 15, 16.)

consequences of those impairments." *England v. Astrue*, 490 F.3d 1017, 1023 (8th Cir. 2007).   Limiting an individual to unskilled work does not necessarily mean that the individual would have the mental capacity to perform all jobs in that category.  *See Lucy*, 113 F.3d at 909; *Pickney v. Chater*, 96 F.3d 294, 296-97 (8th Cir. 1996).

In *England, supra*, a consultative psychologist determined that a claimant had IQ scores in the borderline intellectual functioning range and had moderate limitations in carrying out detailed instructions and making judgments on simple work-related decisions. The ALJ posed a hypothetical substantially similar to the one here, assuming a limitation to work with only routine interpersonal contact with others, where tasks were learned by rote, little judgment was required, and supervision was simple, direct and concrete.  The Eighth Circuit stated that the hypothetical "could have more clearly conveyed the limitations on executing simple and detailed instructions" assessed by the psychologist, but any inadequacy was harmless because Plaintiff's attorney posed to the vocational expert an alternate hypothetical reflecting the specific limitations, in response to which the expert testified there still would be jobs that the claimant could undertake.  *England*, 490 F.3d at 1023-24.

Here, no alternate hypothetical was posed and Plaintiff was proceeding pro se at her administrative hearing.  As stated, the hypothetical to which the vocational expert responded did not include any specific reference to Plaintiff's intellectual capabilities and the language used is inadequate to reflect the extent of her limitations if the ALJ fully credits Dr. Spellmann's estimated IQ and the findings of the agency physicians.

Furthermore, it is questionable whether Plaintiff was capable of performing all the positions identified by the vocational expert in responding to the ALJ's hypothetical.  The

expert stated that the hypothetical individual could perform the following unskilled positions: (1) grocery bagger, of which there are more than 1.8 million nationally; (2) maid, of which there are more than 3.1 million nationally; and (3) agricultural laborer, of which there are more than 1.9 million nationally.  (Tr. 113.)  While the last two positions require only a reasoning level of 1, the grocery bagger position requires a reasoning level of 2, which is defined by the Dictionary of Occupational Titles (DOT) as the ability to "[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions."  *See* DOT § 323.687-014 (cleaner, housekeeping); § 920.687-014 (bagger); § 929.687-018 (agricultural laborer) (4th ed. 1991).  The findings of the agency physicians set out above expressly preclude the performance of jobs requiring the ability to understand, remember and carry out detailed instructions.  (Tr. 152.)

After eliminating the bagger position as beyond Plaintiff's limitations, the total number of available jobs may still constitute a "significant number," as required by the regulations.  *See Clay v. Barnhart*, 417 F.3d 922, 927, 931 (8th Cir. 2005) (disregarding jobs that claimant might not have ability to perform, vocational expert still identified 2,000 other jobs statewide, 161,000 nationally, and 500 locally).  However, this is a determination that should be made by the vocational expert, after being presented with a hypothetical clearly conveying Plaintiff's intellectual limitations.  *See Swope*, 436 F.3d at 1026.

In summary, the Court finds that the record before the ALJ raises questions regarding the level of Plaintiff's intellectual functioning and its effect on the ALJ's determinations at each step of the sequential analysis.  Under these circumstances, the case must be remanded so that valid IQ testing can be performed, the ALJ can address Dr. Spellmann's estimated IQ in light of the testing results and rest of the record, the ALJ

can reassess Plaintiff's RFC based on the developed record, and the ALJ can pose a hypothetical question that clearly conveys the intellectual limitations that he finds to be supported by the evidence.

IV.

Next, Plaintiff argues that, in addition to failing to consider her borderline intellectual functioning, the ALJ failed to take into account the severity of Plaintiff's depression at step five and thus erred in finding that there is other work in the economy that she can perform.[6] He contends that no medical evidence supports the ALJ's RFC assessment stated in the hypothetical question.

A hypothetical question need only include the limitations that are found to exist by the ALJ, as long as the ALJ's finding is supported by substantial evidence in the record. *Lacroix*, 465 F.3d at 889.  Here, the evidence supports the ALJ's findings regarding Plaintiff's depression, *i.e.*: that, at Petitioner's most recent visit to a mental health clinic on February 5, 2004,[7] she was considered stable on her medication (Tr. 122); that she had exhibited a pattern of noncompliance with treatment followed by stability when she resumed taking her medication as prescribed (*see* Tr. 120, 124-37); that she reported no side effects or financial difficulties in obtaining her medication; that she engaged in a variety of activities not typically performed by someone who is too disabled to work (Tr. 65-

---

[6]Plaintiff does not contest the ALJ's determination that she does not suffer from a severe physical impairment.  (Tr. 12-13.)

[7]The hearing before the ALJ was held on October 18, 2005.

66, 70-71, 200-01);[8] and that she did not require a highly supportive living arrangement to function.

These are valid reasons for discounting the credibility of Plaintiff's assertions of more extensive limitations due to her depression.  *See Flynn v. Astrue*, 513 F.3d 788, 794-95 (8th Cir. 2008) (substantial evidence supported ALJ's finding of no significant mental limitations where treating psychologist found that medication was helping claimant's depression and she was doing well psychologically); *Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir. 2007) (RFC determination was proper where claimant experienced intermittent depressive symptoms largely due to chaotic lifestyle and family life, but otherwise generally functioned reasonably well and was capable of having meaningful interpersonal relationships); *Goff v. Barnhart*, 421 F.3d 785, 793-94 (8th Cir. 2005) (ALJ properly found that claimant's depression was not as limiting as alleged where she was stable on medication and experienced only moderate symptoms and moderate difficulties in social, occupational or school functioning); *Randolph v. Barnhart*, 386 F.3d 835, 842 (8th Cir. 2004) (no error in partially discrediting claimant's testimony where her depressive disorder did not markedly impair her ability to perform the usual activities of daily living); *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) (absence of supporting medical evidence, infrequent pursuit of treatment, and failure to follow the treatment prescribed are valid bases for discounting subjective complaints).

---

[8]She reported that she takes care of all personal grooming; performs all household chores including laundry, cleaning, doing home repairs and washing the car; shops; prepares meals daily; takes care of her daughter; pays bills; drives and uses public transportation; walks about four miles a day for exercise; reads and listens to the radio; attends church; and socializes with friends and relatives.

In light of the evidence, the ALJ also properly adopted the opinion of the agency mental health professionals who reviewed Plaintiff's medical records and found that her depression resulted in only mild restrictions in her activities of daily living, with moderate difficulties in social functioning and maintaining concentration, persistence and pace, and with no extended or repeated episodes of decompensation.  (Tr. 148.)  *See Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004) (state agency RFC assessments and claimant's reported daily activities were substantial evidence to support RFC determination); 20 C.F.R. § 416.927(f)(2)(i) (ALJ must consider opinions of state agency medical consultants, who are "highly qualified physicians and psychologists ... [and] experts in Social Security disability evaluation").  This opinion is further supported by Dr. Spellmann's observations that Plaintiff "carrie[d] on a full life with her family," was able to function adaptively well at an acceptable level on her medication, and "might be better off working than at home." (Tr. 119.)

Therefore, substantial evidence supports the ALJ's assessment as to the severity of Plaintiff's depression.  However, after developing the record regarding Plaintiff's intellectual functioning, he should consider her depression in combination with any intellectual deficiencies.  *See* 20 C.F.R. § 416.923 (requiring consideration of "the combined effect" of all impairments).

## Conclusion

IT IS THEREFORE ORDERED that the Commissioner's decision is **reversed** and this matter is **remanded** to the Commissioner for further proceedings consistent with this

opinion.  This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and

*Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

DATED this 10th day of March, 2008.

_____
UNITED STATES MAGISTRATE JUDGE